UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ERIC J. KING,<br><br>Defendant. | 3:07-CR-30113-01-KES<br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Eric J. King, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 143. Plaintiff, the United States of America, opposes the motion. Docket 156. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

King pleaded guilty to assaulting a federal officer in violation of 18 U.S.C. §§ 111 and 2, and assault with a dangerous weapon in violation of 18 U.S.C. §§ 113(a)(3) and 1153. Dockets 103, 106. On January 23, 2009, this court sentenced King to 120 months in custody on each count, to run consecutively, followed by 3 years of supervised release. Docket 119; Docket 120 at 2-3; Docket 125 at 48-49. King is eligible for home confinement on May 2, 2025, and his current anticipated release date is November 2, 2025. Docket 145 at 431.

King is incarcerated at United States Penitentiary (USP) Victorville. Docket 151 at 2. As of October 6, 2020, there are currently 3 active COVID-19

cases among USP Victorville's inmates, 12 active cases among the facility's staff, and 128 inmates and 11 staff have recovered from COVID-19. *See BOP: COVID-19 Update*, Fed. Bureau of Prison, https://www.bop.gov/coronavirus/ (last visited on Oct. 6, 2020). There have been 0 deaths from COVID-19. *Id.*

King is a 37-year old, Native American male. PSR at 2. King's health conditions include near obesity, hypertension, and asthma. Docket 145 at 69, 232, 402, 405; Docket 151 at 10. King weighs between 207 and 210 pounds, and he is 71 inches tall. Docket 145 at 232, 405; Docket 151 at 10. Based on his height and weight, his body mass index (BMI) is between 28.9 and 29.3. *Adult BMI Calculator*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_c alculator/bmi _calculator.html (last visited on Oct. 4, 2020). King is prescribed an Albuterol inhaler for shortness of breath and asthma attacks. Docket 145 at 200, 381, 417. His hypertension is controlled with medication, a low sodium diet, and exercise. *Id.* at 385.

On September 4, 2020, King submitted a request for compassionate release to the warden, requesting he be considered for early release because of his health conditions and COVID-19. Docket 151-1. King filed a pro se motion with the court for relief under the First Step Act. Docket 143. King's counsel subsequently filed a supplement to his pro se motion. Docket 151.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C.

§ 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release. § 603. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

King argues that the risk posed by the global COVID-19 pandemic, together with his health conditions, satisfies the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 151 at 1. King requests a sentence of time served and, if deemed necessary by the court, a period of home confinement as a condition of supervised release. *Id.*

I.   **Administrative Exhaustion**

Previously, only the Bureau of Prisons (BOP) Director possessed the authority to bring a compassionate release motion on a defendant's behalf.

With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

Counsel for King submitted a request for compassionate release to the warden on September 4, 2020. Docket 151-1. The 30-day period expired on October 4, 2020. Given that the 30-day waiting period required by 18 U.S.C. § 3582(c)(1)(A) has lapsed, King's motion is ripe for review on the merits.

II.     **Extraordinary and Compelling Reasons**

Section 3582(c)(1)(A)(i) provides that the sentencing court may grant compassionate release based on "extraordinary and compelling reasons[.]" Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id*. Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* Additionally, there is a fifth catch-all category for an "extraordinary and compelling reason other

4

than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D).

After the FSA was passed, the Sentencing Commission did not update its policy statement because the Sentencing Commission has not had a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. *See United States v. Rodd*, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020). It is clear that Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission. *See* 132 Stat. at 5239; 18 U.S.C. § 3582(c)(1)(A). But the Commission has not addressed whether the policy statement from the old regime is applicable to the new statute nor has it adopted a new policy statement. Because the First Step Act changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon*, 2020 WL 2115807, at

5

\*3 (D.N.D. May 4, 2020) (citing *United States v. Fox*, 2019 WL 3046086, at \*3 (D. Me. July 11, 2019); *United States v. Beck*, 425 F. Supp. 3d 573, 578-80 (M.D.N.C. 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at \*3 (D. Conn. Feb. 7, 2020). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."); *see also United States v. Frith*, 2020 WL 4229160, at \*2 (D.N.D. July 23, 2020).

Assuming that the policy statements continue to apply to compassionate release motions brought under the amended FSA, King has failed to show that his health conditions and race rise to extraordinary and compelling circumstances.

King contends that his circumstances warrant relief under the medical conditions category, U.S.S.G. § 1B1.13 comment note 1(A), and the catch-all provision, U.S.S.G. § 1B1.13 comment note 1(D). Docket 151 at 3-14. King argues that his health conditions and race put him at high-risk of serious complications if he contracts COVID-19. *Id.* at 7.

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. People with the following health conditions are at an increased risk of severe illness from COVID-19: cancer, chronic kidney disease, COPD, immunocompromised state from organ transplant, obesity (a BMI of 30 or higher), serious heart conditions, sickle cell disease, and Type II diabetes.

6

*People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal (Sept. 11, 2020). The Centers for Disease Control and Prevention (CDC) also provided a list of medical conditions that *might* put a person at an increased risk of severe illness from COVID-19. *Id.* These medical conditions include asthma (moderate to severe), hypertension or high blood pressure, smoking, liver disease, Type 1 diabetes mellitus, and several others. *Id.*

    The court has reviewed the medical records submitted in this case. King's health conditions include hypertension and asthma. King's asthma and hypertension are listed as medical conditions that *might* increase the risk of severe illness from COVID-19. King's asthma appears to be managed with an inhaler. Docket 145 at 192, 381, 385. King does not experience coughing, wheezing, nighttime symptoms, or interference with activities. *Id.* at 381, 385; *see United States v. Muhlenhardt*, 2020 WL 4697112, at *4 (D. Minn. Aug. 13, 2020) ("[D]espite the risk [the defendant's] asthma can present, the Court agrees with the findings of several courts that this risk alone is insufficient to warrant release."); *United States v. Slone*, 2020 WL 3542196, at *6 (E.D. Pa. June 30, 2020) ("[A]n incarcerated person arguing extraordinary and compelling reasons based on asthma which is not moderate to severe is not entitled to compassionate release."). Likewise, King's hypertension is managed with medication, a low sodium diet, and exercise. Docket 145 at 381, 385.

    King claims that he suffers from "actual or near obesity." Docket 151 at

7

1, 10-11. According to the CDC, with a BMI between 28.9 and 29.3, King is classified as overweight, not obese. "[T]he fact that [King] suffers from [near] obesity during the age of the COVID-19 pandemic does not necessarily mean, on its own, that extraordinary and compelling reasons justify the reduction of [his] sentence." *United States v. Williams*, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020); *see also United States v. McAbee*, No. 4:14-CR-40027-KES, 2020 WL 5231439, at *3 (D.S.D. Sept. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons); *United States v. Saenz*, No. 3:10-CR-30027-RAL, 2020 WL 4347273, at *5 (D.S.D. July 29, 2020) (finding defendant with other medical conditions and a BMI between 40 and 44.9 did not establish extraordinary and compelling reasons). King has not identified how his "near" obesity, asthma, and hypertension prevent him from providing self-care in a correctional facility setting.

      Additionally, King contends he is more susceptible to COVID-19 due to his race. Docket 151 at 11-12. Indeed, the CDC noted there is evidence that some racial and ethnic minority groups are being disproportionately affected by COVID-19. *Health Equity Considerations and Racial and Ethnic Minority Groups*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (last visited Oct. 2, 2020). Even so, the CDC attributes this to inequities in social determinants of health such as poverty and access to health care. *Id.* Thus, courts have not found race to be a risk factor for COVID-19 similar to age or

8

medical condition. *See, e.g., United States v. Leigh-James*, 2020 WL 4003566, at *8 (D. Conn. July 15, 2020); *United States v. Chambers*, 2020 WL 4260445, at *4 (E.D. La. July 24, 2020).

While some of these chronic conditions may put King at a higher risk of severe illness if he contracts COVID-19, that has not been the case as of yet. *See United States v. Fry*, 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (holding that to merit compassionate release, inmate "must show more than a mere speculation of the possibility of contracting the virus."). Additionally, there is no evidence in the record to suggest he has not been able to manage these conditions while in the prison environment. King is receiving medical attention and treatment for these conditions, which all appear to be stable or controlled. *See* Docket 145 at 192, 381, 385, 417 (detailing chronic care visits and medication for hypertension and asthma). "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) (internal quotation omitted). Thus, the court finds that King does not satisfy the criteria under U.S.S.G. § 1B1.13 comment note 1(A) or U.S.S.G. § 1B1.13 comment note 1(D).

COVID-19 has infiltrated USP Victorville, but it has not had catastrophic effects. At the present time, there are 13 active COVID-19 cases among the inmates and staff at USP Victorville, and 128 inmates and 11 staff have recovered from COVID-19. *See United States v. Melgarejo*, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020) ("[T]he mere presence of COVID-19 in a particular

9

prison . . . cannot justify compassionate release—if it could, every inmate in that prison could obtain release."). Although King is unable to practice preventative measures as effectively in custody as he would in home confinement, USP Victorville encourages inmates to wash their hands frequently, wear facial masks, and practice social distancing when feasible. *See BOP Implementing Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Oct. 2, 2020). King can do all those recommendations to some extent.

The court believes that King's medical conditions are appropriately managed at USP Victorville, that the facility is engaged in strenuous efforts to protect inmates against the spread of COVID-19, and that it would act to treat any inmate who does contract COVID-19. Although the court in no way underestimates King's health conditions, such ailments, coupled with the present conditions at USP Victorville, do not establish extraordinary and compelling reasons justifying his early release.

Even assuming King's medical conditions are "extraordinary and compelling reasons warrant[ing] such a reduction" under 18 U.S.C. § 3582(c)(1)(A)(i), the sentencing factors in § 3553(a) do not weigh in favor of a reduction. King's convictions stem from assaulting his pregnant girlfriend and a tribal police officer. *See* PSR ¶¶ 11-19. During a physical altercation between King and his pregnant girlfriend, King bit his girlfriend's back with his teeth. *Id.* ¶¶ 12-13. He also hit her with closed fists and kicked her with shod feet. Docket 125 at 37; PSR ¶ 13. King's girlfriend was treated at a hospital for her

injuries and received medication to stop her contractions because she was 12-weeks from full term. Docket 125 at 37; PSR ¶ 19. At sentencing, the court noted that the injuries sustained by King's girlfriend could have been much worse. Docket 125 at 37. During King's arrest for assaulting his girlfriend, King also assaulted a tribal officer. PSR ¶ 17. King punched the officer's back with closed fists and jumped on the officer's back. *Id.*

At sentencing, this court granted a seven-level upward variance, citing to King's involvement with the federal court system from a young age, his limited employment, and his lack of involvement in pro-social activities. Docket 125 at 36, 48; *see also* PSR ¶¶ 49-51, 88-90. The upward variance also served the interest of protecting the public because of the multiple allegations of sexual assaults perpetrated by King against minor victims. Docket 125 at 37; PSR ¶¶ 55-67, 116. King's advisory guideline range for these offenses was 97-120 months in custody. Docket 125 at 48. In the plea agreement, the United States and King stipulated that they would jointly recommend a sentence of 240 months. Docket 103 at 3; PSR ¶ 98. The court accepted this recommendation and sentenced King to 240 months in custody (120 months on each count to be served consecutively). Docket 125 at 48; Docket 120 at 2-3.

King has served approximately 64% of his full term and approximately 71% of his statutory term. Docket 145 at 432. And he appears, to his credit, to have worked on improving himself in custody with coursework. *Id.* at 428-29; *see also* Docket 152 at 1; Docket 153 at 1-2. But over his ten years in custody, King has over 20 disciplinary reports. Docket 145 at 420-426. Overall, the

11

original sentence was chosen with care, considering King's and his community's needs and all of the other applicable sentencing factors. Therefore, the court finds that King's sentence of 240 months in custody followed by 3 years of supervised release continues to be appropriate for the seriousness of the crimes to which he pleaded guilty.

## CONCLUSION

King has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 143) is denied.

Dated October 6, 2020.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE